```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------X
```

United States of America,

                                     CR-02-1327 (CPS)

    - against -              SENTENCING MEMORANDUM
                                  AND OPINION

Edwin Perez,

                Defendant.

```
-----------------------------X
```

SIFTON, Senior Judge.

    On September 22, 2003, a jury found defendant Edwin Perez guilty of conspiracy to distribute powder cocaine, crack cocaine, and heroin in violation of 21 U.S.C. §§ 846.[1] In May 2004, I sentenced Perez to 292 months imprisonment[2] to be followed by five years of supervised release. Defendant appealed to the Second Circuit Court of Appeals, and on June 6, 2005, the Court of Appeals affirmed the conviction but remanded the case for re-sentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). For the reasons that follow, I will at re-sentencing consider a non-guidelines sentence.

---

    [1] As I previously found, the relevant drug quantities are as follows: six kilograms of powder cocaine, 906.5 grams of crack cocaine, and 190 grams of heroin.

    [2] Perez's criminal history category was V, and his adjusted offense level was 36, requiring a range of 292 to 365 months imprisonment under the then mandatory federal sentencing guidelines.

## Discussion

Subsequent to Perez's original sentencing, the Supreme Court held in *United States v. Booker*, 125 S.Ct. 738 (2005), that the mandatory nature of the United States Sentencing Guidelines violated the Sixth Amendment because it deprived a defendant of the right to have facts which mandated an increase in his sentence found by a jury beyond a reasonable doubt. In its remedy opinion, the Court severed 18 U.S.C. § 3553(b)(1), which had rendered the Guidelines binding on federal sentences. *Id.* at 764. This left 18 U.S.C. § 3553(a) in effect, which states:

> The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5) any pertinent policy statement--

>	(A) issued by the Sentencing Commission
>	pursuant to section 994(a)(2) of title 28,
>	United States Code, subject to any amendments
>	made to such policy statements by act of
>	Congress . . . .
> (6) the need to avoid unwarranted sentencing
> disparities among defendants with similar records
> who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims
> of the offense.

A first step in post-*Booker* sentencing is to determine the applicable Guideline range after making such findings of fact as are necessary, as required by 18 U.S.C. § 3553(a)(4). *Crosby*, 397 F.3d at 112. Then a Court is to consider policy statements issued by the Sentencing Commission, as required § 3553(a)(5). *Id*. This applicable Guideline range is determined in the same manner as before *Booker*. *Id*. Once this Guideline range is determined, the Court has the duty to "consider" it along with the other factors listed in § 3553(a). *Id.* at 112-13.

In the present case, Perez's criminal history category is V, and the offense level, taking into account the relevant drug quantities, is 36. The recommended range of imprisonment is therefore 292-365 months. This range reflects the guidelines' treatment of 1 gram of crack the same as 100 grams of powder cocaine. This differential treatment is commonly referred to as the "100:1 ratio."

In *Simon v. United States*, 361 F.Supp.2d 35 (E.D.N.Y.2005), I rejected the 100:1 ratio and determined that a 20:1 or 10:1 ratio better expressed the seriousness of defendant's offense and

the other factors to be considered under § 3553. In the present case, if a 20:1 or 10:1 ratio were employed, the appropriate offense level would be 34, bringing the recommended guideline imprisonment range down to 235-293 months.[3]

Much of the reasoning in the *Simon* case applies in the present case. Accordingly, for substantially the reasons set forth in the *Simon* decision, I intend, at re-sentencing, to consider a non-guidelines sentence.[4]

Since the *Simon* decision was issued, several courts in other circuits have held that district judges may not categorically reject the 100:1 ratio in sentencing in favor of a lower ratio. *See U.S. v. Pho*, 433 F.3d 53 (1st Cir.2006); *U.S. v. Eura,* 440 F.3d 625 (4th Cir.2006); *U.S. v. Miller*, 450 F.3d 270 (7thCir.2006). My rejection of the 100:1 ratio is neither categorical nor based on the adoption of a particular alternate ratio.

In *Pho*, the First Circuit Court of Appeals held that a district court's categorical rejection of the 100:1 ratio amounted to error as a matter of law. The Court stated, "federal courts are bound by Congress's...judgments concerning the

---

[3] Use of some ratio keyed to the guidelines fo powder cocaine reflects itself consideration of the guidelines as required by § 3553 and sets limits on sentencing disparity.

[4] I will at re-sentencing explicitly consider the remaining factors with respect to Perez's case. I issue this written opinion, however, to specifically address the 100:1 ratio issue.

appropriate penalties for federal crimes. 433 F.3d at 62. The Court reasoned that Congress used the 100:1 ratio in fashioning maximum and minimum sentences under the statutes, and therefore the Sentencing Commission's incorporation of that ratio into the guidelines was by "congressional edict." *Id*. The Court held that "it follows inexorably that the district court's categorical rejection of the 100:1 ratio impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses." *Id*. at 63.

However, in *Booker*, the Supreme Court severed the provisions of the Federal Sentencing Act that made the guidelines mandatory because the "right to have the jury find the existence of any particular fact that the law makes essential to his punishment...is implicated whenever a judge seeks to impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant." 543 U.S. at 232 (internal quotations omitted). Because the guidelines were binding, the Court held that "the Guidelines have the force and effect of laws." *Id*. at 234.

As was the case in *Booker*, federal judges routinely find facts, such as drug quantities, by a preponderance of the evidence that were not proved to a jury beyond a reasonable doubt. The Court held that when the guidelines mandated a higher sentence based on those facts than would be available based on

the facts found by the jury, a defendant's Sixth Amendment rights were violated. The Court stated:

> As far as the defendants are concerned, they face significantly higher sentences--in Booker's case almost 10 years higher--because a judge found true by a preponderance of the evidence a fact that was never submitted to the jury. Regardless of whether Congress or a Sentencing Commission concluded that a particular fact must be proved in order to sentence a defendant within a particular range, "[t]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbours,' rather than a lone employee of the State."

Id. at 238 (*quoting Blakely v. Washington*, 542 U.S. 296 (2004)). If the 100:1 powder cocaine to crack ratio were binding on all federal judges, as the First Circuit Court of Appeals appears to have stated in *Pho*, the ratio would carry "the force and effect of laws," and would thus implicate a defendant's Sixth Amendment rights. In a case such as Perez's, where the judge, after the jury has rendered its verdict, finds the relevant drug quantities by a preponderance of the evidence, an increased sentence based on the 100:1 ratio would be mandated (as opposed to recommended), in violation of *Booker* and the Sixth Amendment.

The *Pho* Court also held that if district courts were able to reject the 100:1 ratio, in increase in sentencing disparities would result. The Court reasoned, "if sentencing courts are free to replace the 100:1 ratio with whatever ratio they deem appropriate, the sentences of defendants for identical 'real

conduct' will depend largely on which judge happens to draw a particular case." *Pho,* 433 F.3d at 63. However, sentences of different defendants convicted of identical conduct will always depend on their particular judges. Different judges may impose different, but still reasonable, sentences for defendants convicted of identical criminal conduct within the guidelines range or even outside the guidelines after consideration of the relevant § 3553 factors. Rational decisions to reject the 100:1 ratio will not themselves produce unwarranted sentencing disparities. Such disagreements will be based on reason and reasonable men and women may disagree.[5] Indeed, the quantity of 100:1 ratio cases being appealed by the government to the circuit courts indicates that numerous district courts around the country are choosing to employ lower ratios. *See* RYAN S. KING & MARC MAUER, SENTENCING WITH DISCRETION: CRACK COCAINE SENTENCING AFTER *BOOKER* 4-5 (2006) (documenting cases where district courts have rejected the 100:1 ratio). To the extent that circuit court decisions create disparities between courts in different circuits, those conflicts can be addressed in the manner that conflicts between circuits are normally addressed: by the Supreme Court.[6]

---

[5] The extent of the disparity created by use of a ratio other than the 100:1 ratio is cabined (1) by tying the ratio in all events to the guidelines' treatment of powder cocaine and (2) by literature and precedent cited in *Simon* which itself considers the limited number of appropriate ratios and the reasons for choosing one over the others.

[6] The suggestion in *Pho* that any non-guidelines sentence undermines the goal of avoiding sentencing disparities effectively re-introduces the mandatory guidelines system rejected in *Booker*.

Accordingly, I will not be bound by the 100:1 ratio set forth in the guidelines.

## Conclusion

For the foregoing reasons, and for the reasons substantially set forth in my prior decision in the *Simon* case, I will at re-sentencing consider a non-guidelines sentence.

The Clerk is directed to transmit a copy of the within to all parties.

SO ORDERED.

Dated :   Brooklyn, New York
         July 27, 2006


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge